IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| TUBE-MAC INDUSTRIES, INC., *et al.*,  )<br>    Plaintiffs,  )<br>  )<br>    v.  )<br>  )<br>STEVE CAMPBELL and  )<br>TRANZGAZ, INC.,  )<br>    Defendants.  )<br>_____)  | Civil Action No. 2:20CV197 (RCY) |

**MEMORANDUM OPINION**

This matter comes before the Court on two motions: (1) Plaintiffs' Motion to Dismiss Defendant's Counterclaim (ECF No. 115) and (2) Plaintiffs' Motion for Summary Judgement (ECF No. 127). The motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will grant Plaintiffs' Motion to Dismiss Defendant's Counterclaim and deny Plaintiffs' Motion for Summary Judgement.

## I. FACTUAL HISTORY[1]

In 2001, Steven Campbell ("Campbell" or "Defendant Campbell") incorporated Trans Ocean Gas ("TOG"). (Countercl., ECF No. 114 at 8.) TOG was attempting to develop and commercialize plastic pressure vessels for the storage and transportation of compressed natural gas. (*Id.*) Campbell worked for, was the largest shareholder of, and served as Director of TOG. (Obj. Mot. Summ. J., ECF No. 133 at 5.) Darrell Hawkins ("Hawkins") served as the President of TOG; although, it is disputed whether Campbell reported to Hawkins or Hawkins reported to Campbell. (Mem. Supp. Mot. Summ. J., ECF No. 128 at 9; Obj. at 5.) Desmond McGrath ("McGrath") was also involved with TOG, although the exact nature of his relationship with the company is unclear.[2]

By 2007, TOG had developed a protype of its pressure vessel, and the prototype was experiencing some defect. (Mem. Supp. Mot. Summ. J. at 10; Countercl. at 11.) According to Plaintiffs, the defect was a leak resulting from an insufficient seal between the boss and the liner. (Mem. Supp. Mot. Summ. J. at 10.) According to Campbell, the defect was a manufacturing

---

[1] Plaintiffs have raised several deficiencies in Defendant Campbell's court filings. (Mem. Supp. Mot. Dismiss, ECF No. 116 at 1-2; Reply, ECF No. 135 at 3.) While Plaintiffs are correct, it is important to note that Campbell is representing himself *pro se*. The Fourth Circuit has cautioned that a liberal approach should be taken regarding the filings of *pro se* parties stating, "[p]ut succinctly, we impose on *pro se* litigants —even those who may be cantankerous or make extraneous and inappropriate assertions against their opponents or the court— 'less stringent standards than formal pleadings drafted by lawyers.'" The Federal Rules of Civil Procedure allow, but do not require, courts to consider materials on the record that have not been cited to by either party. Fed. R. Civ. P. 56 advisory committee's note. The Eastern District of Virginia's Local Rules also allow courts to make independent searches of the record. *See McCarty v. Norfolk Southern Ry. Co.*, No. 2:18cv21, 2019 U.S. Dist. LEXIS 231248 at *23 (E.D. Va. 2019) (noting that the court "reserve[d] the right to consider additional facts, where necessary for a just adjudication of the Motion."); *Certain Underwriters at Lloyd's v. Advanfort Co.*, No. 1:18cv1421, 2019 U.S. Dist. LEXIS 226374, at *14 (E.D. Va. Nov. 13, 2019) (stating "due to the frequent deficiencies in defendant's filings, the Court has consistently attempted to review all evidence in the record, even evidence not cited in either party's papers."). Despite several procedural defects in Campbell's filings, the Court has undertaken an extensive search of the record in order to reach a fair disposition of these motions.

[2] McGrath represents himself as TOG's Vice President of Sales and System Integration. (Answer Ex. 14 at 59.) However, Hawkins claims McGrath never held a formal position with TOG while Hawkins was there. (Mem.Supp. Mot. Dismiss Ex. A at 4.)

error, not a design error, that led to a collapsed liner during a test of the prototype. (Countercl. at 11.)

In early May 2007, Campbell and McGrath met with Gary Mackay and Dan Hewson, employees of Tube-Mac Industries ("Tube-Mac"), at an industry conference in Houston, Texas. (Mem. Supp. Mot. Summ. J. at 10; Obj. at 5.) This conversation was either about how to solve the leak issue or about the potential of contracting with Tube-Mac for the manufacturing of a part already conceived of by Campbell. (Mem. Supp. Mot. Summ. J. at 10; Countercl. at 11.) In August 2007, TOG and Tube-Mac reached some form of agreement and began working together. (Mem. Supp. Mot. Summ. J. at 10-11; Countercl. at 11-12.)

The parties worked together from 2007 to 2010. (Mem. Supp. Mot. Summ. J. at 12.) However, their accounts of that period vary greatly. Campbell's version has him designing and problem solving, while Tube-Mac merely followed his plans. (Obj. at 6; Countercl. at 12.) Plaintiffs' version has Gary Mackay and Dan Hewson designing, developing, and manufacturing prototypes of a crimped port boss to solve the leakage issue. (Mem. Supp. Mot. Summ. J. at 11.)

On August 22, 2011, and September 8, 2011, two provisional patent applications were filed. (*Id.* at 13.) Both were entitled "METHOD OF FABRICATING TYPE 4 CYLINDER AND ARRANGING IN TRANSPORTATION HOUSING FOR TRANSPORT OF GASEOUS FLUIDS" and both listed Campbell as the sole inventor. (*Id.*)

On November 15, 2011, Campbell signed an agreement that he believes is binding on the Plaintiffs. Campbell claims that the agreement contains a forum-selection clause and states that he is the inventor. (Countercl. at 13-14; Obj. at 4.) However, there is no forum-selection clause in the agreement. (*See* Countercl. Ex. A.) Additionally, the agreement was only signed by Campbell (for himself and TOG) and Geoff Mackay for a separate entity, Trans Ocean Gas

International.[3] (Countercl. Ex. A at 8.) Plaintiffs claim that they are not parties to this agreement and claim the agreement was voided by Campbell's failure to make proper disclosures (namely that he applied for a patent as the sole inventor) during negotiations. (Mem. Supp. Mot. Dismiss, ECF No. 116 at 11.)

On November 16, 2011, Campbell and Tube-Mac's lawyer, Neil Smith, corresponded about the patent application. Neil Smith emailed that he had reviewed the patent application and noted that it included a number of ideas that belonged to Plaintiffs. (Mem. Supp. Mot. Summ. J. Ex. 16 at 2). Campbell responded that "[t]he only thing that may be upsetting is the crimping of a port boss." (*Id.*)

The shareholders of TOG voted on March 15, 2012, to cease all business activity of the company, including payment of maintenance fees on the provisional patent. (Mem. Supp. Mot. Summ. J. Ex. 24 at 14.) After this, the provisional patent reverted back to Campbell. (*Id.*) At some point, TranzGaz was formed. The specifics of when it was created and who was involved are unclear.

On March 7, 2014, a U.S. patent application was filed; it listed TranzGaz Inc. as the assignee and Campbell as the soler inventor. (Mem. Supp. Mot. Summ. J. at 14.) On June 28, 2016, the U.S. Patent Office approved the application and issued U.S. Patent No. 9,376,049 ("the '049 Patent" or "the Patent"). (*Id.*) Chinese, European, and Canadian patent applications were filed and granted based off the U.S. patent application. (*Id.*) In January 2020, TranzGaz

---

[3] Campbell has yet to articulate why he believes this agreement is binding on any of the Plaintiffs in this case. Geoff Mackay appears to be both Trans Ocean Gas International's vice president and Tube-Mac's vice president. (Countercl. Ex. A at 8; Answer Ex. 14 at 107.) Gary Mackay is the president of Tube-Mac. The agreement references a company called Nakoma, which Campbell believes to be the Mackay family investment vehicle. (Countercl. at 13.) Campbell alleges that Tube-Mac and Nakoma are run by the same people. (ECF No. 7 at 3.) However, Campbell has never asserted that these overlaps result in the unsigned parties being bound by the agreement.

allegedly rescinded its assignment of Patent '049, and ownership reverted to Campbell. (Resp. Opp'n Mot. Summ. J., ECF No.134 at 2.)

## II. PROCEDURAL HISTORY

Plaintiffs filed their Complaint in the United States District Court for the Western District of Pennsylvania on September 17, 2019. (ECF No. 1.) Beginning in October 2019, Campbell filed many documents *pro se*, attempting to represent both himself and TranzGaz. (*See* ECF Nos. 13, 14, 15, 22, 24, 30, 39.) The Court repeatedly informed Campbell that he was unable to represent TranzGaz as it was a corporation, and he was not an attorney. (*See* ECF Nos. 19, 23, 25, 91-1, 91-2.) On January 22, 2020, Plaintiffs filed a Request for Entry of Default Against TranzGaz. (ECF No. 33.) On February 13, 2020, the Western District of Pennsylvania issued a Memorandum Order directing the Clerk of Courts to enter default with respect to TranzGaz. (ECF No. 47.) The Clerk filed an Entry of Default against TranzGaz on that same day. (ECF No. 48.)

On February 17, 2020, Campbell filed "Defendant Response to Amended Claim and Motion for Dismissal for Want of Jurisdiction, and Lack of Consent in an Improper Forum," in which he argued that the Western District of Pennsylvania did not have personal jurisdiction over him. (ECF No. 49.) The Court agreed that it did not have personal jurisdiction over Campbell, and, on April 20, 2020, it ordered that this action be transferred to the Eastern District of Virginia. (ECF Nos. 64, 65.)

After this action was transferred to the Eastern District of Virginia, it was assigned to Judge Allen. (ECF No. 66.) Campbell again tried to represent TranzGaz *pro se*. (ECF Nos. 74, 75.) The Court issued an Order directing TranzGaz to file a Notice through retained counsel within thirty days of June 26, 2020. (ECF No. 82.) On July 23, 2020, attorney Robert McFarland entered a Notice of Appearance on behalf of TranzGaz. (ECF No. 83.)

5

This case was reassigned to the undersigned on October 19, 2020. On November 20, 2020, the Court issued an Order directing that the parties file briefing addressing their positions with regard to whether the United States District Court for the Western District of Pennsylvania had personal jurisdiction over Defendant TranzGaz at the time of the entry of default. (ECF No. 98.) On January 28, 2021, this Court found that the Western District of Pennsylvania did not have personal jurisdiction over Defendant TranzGaz and set aside the default judgment. (ECF No. 112.) On February 2, 2021, Defendant TranzGaz filed an Amended Answer to the Complaint. (ECF No. 113.)

On March 8, 2021, Plaintiffs filed a Motion to Dismiss Defendant's Counterclaim. (ECF No. 115.) Campbell filed "Defendant's Objection to Plaintiffs Motion to Dismiss" on March 29, 2021. (ECF No. 118.) Plaintiffs filed their Reply on April 2, 2021. (ECF No. 119.)

On May 13, 2021, Plaintiffs filed a Motion for Summary Judgment against Defendant Campbell and Defendant TranzGaz. (ECF No. 127.) Campbell filed an "Objection to Plaintiffs' Motion for Summary Judgment" on May 27, 2021. (ECF No. 133.) TranzGaz filed a Response in Opposition on May 27, 2021. (ECF No. 134.) Plaintiffs filed their Reply on June 2, 2021. (ECF No. 135.)

### III. MOTION TO DISMISS

#### A. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). The Federal Rules

of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* In considering a motion to dismiss, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); see also *Martin*, 980 F.2d at 952.

**B. Discussion**

Campbell filed a Counterclaim alleging "fraudulent misrepresentation on the part of the Plaintiffs and, of making a frivolous complaint." (Countercl. at 1.) Campbell does not provide the legal basis for this claim. The bulk of his theory appears to be that:

> Plaintiffs contrived of a way to hale a Canadian citizen and his two-person company with no ties to the Commonwealth of Pennsylvania whatsoever into a most inconvenient forum to inflict as much financial stress as possible . . . commit[ing] several acts of fraudulent misrepresentation against the Counterclaimant and the Courts.

(*Id.* at 1-2.) As such, the Court will construe his Counterclaim as alleging fraudulent representations and fraud upon the court. The Court finds that Campbell did not plead his Counterclaim with particularity, nor did he establish the elements of fraudulent representation or fraud upon the court.

1. Particularity

Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity

7

of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotations and citation omitted). This is often referred to as the "'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). Failure to plead a fraud claim with particularity is treated as a failure to state a claim under Rule 12(b)(6) and warrants dismissal. *Smith v. Clark/Smoot/Russell, A JV,* 796 F.3d 424, 427, 432 (4th Cir. 2015). The Court finds that Campbell has failed to plead his Counterclaim with particularity.

The allegation of fraudulent misrepresentation appears to be based on: (1) Plaintiffs' omission that they were purportedly contractually obligated to sue in Ontario, Canada, and (2) Plaintiffs' allegedly false claim that they were obligated to assign their inventions to a U.S. based subsidiary of their employer. (Countercl. at 2-3.)

Campbell bases his first contention on Exhibit A, an agreement that Campbell claims is between himself and the Defendants. (*Id.* at 2.) He claims that the agreement has a forum selection clause. (*Id.*) However, the agreement does not contain a forum selection clause nor is it signed by any plaintiff in this case. (Countercl. Ex. A.) Without a relevant contract, Campbell has not alleged how the "omission" was fraudulent.

Campbell bases his second contention on the Plaintiffs having provided no employment contracts that mention an obligation to assign intellectual property to Tube-Mac and contends that, since other patent applications submitted by Plaintiffs never mention such an obligation, no obligation exists here. (Countercl. at 3-6.) His specific allegations are that Plaintiffs "concocted a redirection of obligation to assign claimed patent rights," "[Plaintiff] was not hired specifically

8

to invent things," and Campbell is "adamant that there was no contract or employment parameters that required inventions . . . be assigned." (Countercl. at 3-4.) However, "mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985); *see Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989) (noting that the court need not accept the moving party's legal conclusions and characterizations); *Scharpenberg v. Carrington*, 686 F. Supp. 2d 655, 661 (E.D. Va. 2010) (noting that particularity requires more than mere conclusory language). The Court is not bound by Campbell's characterizations and conclusive statements about what the other patent applications mean or the contents of employment agreements between the Plaintiffs that Campbell has likely never seen.

The Court finds that Campbell has failed to plead his Counterclaim with particularity.

### 2. Fraudulent Representation

Campbell does not provide a legal basis for his claim of fraudulent representation. He may be relying on the laws of Ontario, Pennsylvania, or Virginia. Since each jurisdiction has essentially the same elements for fraudulent representation,[4] the Court need not make a determination as to which law applies.

---

[4] Under Ontario law, the elements of fraudulent misrepresentation are: "(1) that the defendant made a false representation of fact; (2) that the defendant knew the statement was false or was reckless as to its truth; (3) that the defendant made the representation with the intention that it would be acted upon by the plaintiff; (4) that the plaintiff relied upon the statement; and (5) that the plaintiff suffered damage as a result." *Chaba v. Khan*, 2020 CanLII 643, para. 15 (Can. Ont. C.A.).

Under Pennsylvania law, the elements of fraudulent representation are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance." *Porreco v. Porreco*, 811 A.2d 566, 570 (Pa. 2002).

Under Virginia law, the elements of fraud are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005).

9

Each jurisdiction requires that the claimant have acted "in reliance" on the statement. *Chaba v. Khan*, 2020 CanLII 643, para. 15 (Can. Ont. C.A.); *Porreco v. Porreco*, 811 A.2d 566, 570 (Pa. 2002); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). And, Campbell never acted in reliance on the "fraudulent statements." Instead, he immediately disputed those statements in his Answer to the Amended Complaint. (ECF No. 49 at 2, 8, 9.) The allegations in Campbell's Counterclaim are more accurately characterized as arguments on the merits of the case, not a separate claim. Campbell has not stated a claim for fraudulent representation.

### 3. Fraud on the Court

Considering that the allegedly fraudulent statements were made in the Amended Complaint itself, Campbell may be attempting to claim that Plaintiffs have committed a fraud on the court. To establish fraud on the court:

> [I]t is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision. Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996) (citations omitted) (internal quotation marks omitted); *see Outen v. Baltimore County*, 177 F.R.D. 346, 348-49 (D. Md. 1998) (noting that the doctrine is "narrowly construed" and "confined to the 'most egregious cases.'").

Fraud on the court is typically alleged in motions to set aside judgments. *See* Fed. R. Civ. P. 60(d)(3). However, there have been several instances of parties attempting to use fraud on the court as an independent cause of action. In *Smith v. Pepsi Bottling Group*, the District Court for

the District of South Carolina dealt with a similar set of facts. No. 2:06-0040, 2007 U.S. Dist. LEXIS 65201 (D.S.C. Aug. 31, 2007). In that case, the plaintiff filed a racial discrimination claim, and the defendant's counterclaim alleged a "fraud in the judicial process." *Id.* at *2. The court defined fraud upon the court as:

> [T]hat species of fraud which does, or attempts to, subvert the integrity of the Court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. . . It is some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy.

*Id.* at *36. The court determined that since the defendant was not "the unsuccessful party" and the plaintiff was not "the prevailing party," fraud upon the court did not apply. *Id.* at 36. Furthermore, the court found that fraud upon the court cannot be an independent claim; it is only used to vacate an already entered judgment. *Id.* at 36-37; *see also Barrett v. Ambient Pressure Diving, Ltd.*, 2008 U.S. Dist. LEXIS 70471, at *14-15 (D.N.H. Sept. 16, 2008) (finding that fraud on the court is not an independent action and cannot be used as a basis of recovery). In *Castro & Co., LLC v. Polymath Inc.*, the District Court for the Northern District of Texas also dealt with the issue of whether fraud on the court can be an independent claim. No. 3:18cv678, 2019 U.S. Dist. LEXIS 151718 (N.D. Tex. Sept. 6, 2019). In that case, the defendant claimed that plaintiffs' lawsuit contained false allegations regarding defendant's use of trademarks and false allegations regarding plaintiffs' ownership of federal registrations. *Id.* at *14. Defendant alleged that these falsehoods were used to initiate the lawsuit and hold their trademarks hostage. *Id.* at *13-14. In dismissing the counterclaim, the court stated "notwithstanding the possibility that [plaintiffs] knowingly filed frivolous claims, there are no allegations in the record that Plaintiffs committed fraud on the court as defined by the Fifth Circuit [bribery of judge or jury, fabrication of evidence]." *Id.* at *15.

Assuming, *arguendo*, that fraud on the court can stand as an independent claim, the conduct required for it is extreme. Campbell has not alleged bribery of judges, fabrication of documents, or anything else of a similar egregious nature. The Court finds that Campbell has not stated a claim for fraud on the court.

### IV. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

The Federal Rules of Civil Procedure provide the standard of review for this case. Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). The evidence must be viewed "in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

#### B. Discussion

##### 1. Framework for Correction of Inventorship Claims

Title 35, United States Code, Section 256 addresses two types of errors on patents: misjoinder and nonjoinder. *Fina Tech., Inc. v. Ewen*, 265 F.3d 1325, 1328 (Fed. Cir. 2001). Misjoinder is when the patent fails to list a person who is an inventor. *See Stark v. Advanced Magnetics*, 119 F.3d 1551, 1553 (Fed. Cir. 1997); *Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004) ("Section 256 creates a cause of action in the district courts for correction of non-joinder"). While the statute only refers to the Director of Patents and Trademarks, it has

been interpreted to pertain to judicial proceedings as well and to allow courts to correct errors in inventorship. *Fina Tech.*, 265 F.3d at 1328. To be a joint inventor, the individual must have contributed to the invention's conception; however, the individual does not need to contribute to every claim. *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019). Additionally, there must be "some quantum of collaboration" between the inventors. *Id.*; *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992).

A claim under § 256 generally consists of two steps. *See Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1302 (Fed. Cir. 2002); *Nexus Techs., Inc., v. Unlimited Power Ltd.*, 2020 U.S. Dist. LEXIS 221767, at *27 (W.D.N.C. Nov. 25, 2020). The court must first construe the patent claims in dispute "to determine the subject matter encompassed" by the claims. *Nexis Techs.*, 2020 U.S. Dist. LEXIS 221767 at *27-28 (quoting *Trovan*, 299 F.3d at 1302). The court must "then compare the alleged contributions of each asserted co-inventor with the subject matter of the properly construed claim[s] to . . . determine whether the correct inventors were named." *Id.* (internal quotations and citation omitted). To prove joint inventorship under the second step, a co-inventor must have (1) contributed in some significant manner to the conception or reduction to practice of the invention, (2) made a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) done more than merely explain to the real inventors well-known concepts and/or the current state of the art. *Id.* at *28; *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1351 (Fed. Cir. 1998).

### 2. Application of Framework to Plaintiffs' Claim

#### a. Step One: Claims in Dispute

Step one is straightforward. Claim One of the '049 Patent is clearly in dispute, as Plaintiffs' entire argument is that they are responsible for the crimping of the port bosses; whereas, Defendants claims that Plaintiffs had nothing to do with the conception of that design. (*See* Mem. Supp. Mot. Summ. J. at 17; Obj. at 1). The relevant portion of Claim One states: "The invention claimed is . . . [a] lightweight intermodal container . . . comprising . . . at least one port boss affixed to each of said domed end portions." (Mem. Supp. Mot. Summ. J. Ex. 12 at 32-33.)

Plaintiffs also assert that Claim Five is in dispute. Plaintiffs argue that Claim Five depends on Claim Two which in turn depends on Claim One. (Mem. Supp. Mot. Summ. J. at 17.) Campbell contends that Claim Five should not be considered in this case, as Plaintiffs never mentioned Claim Five in their Amended Complaint. (Obj. at 4.) However, as the Federal Circuit Court of Appeals has noted, "dependent claims can supply additional context for construing the scope of the independent claims associated with those dependent claims." *Intamin, Ltd. v. Magneter Techs., Corp.*, 483 F.3d 1328, 1335 (Fed. Cir. 2007). Claim Five is dependent on Claim One, via Claim Two.[5] (*See* Mem. Supp. Mot. Summ. J. Ex. 12 at 32-33.) Thus, Claim Five can be used to provide additional context to Claim One. Claim Five states, "[t]he system as set forth in [Claim Two], wherein said port bosses are affixed to the apex of a dome segment of said liner parts by compression and crimping." (*Id.* at 33.)

---

[5] Claim Two states: "the system as set forth in claim 1 . . . comprise: . . . port bosses on said liner . . . ." (Mem. Supp. Mot. Summ. J. Ex. 12 at 33.)

14

*b. Step Two: Were the Correct Inventors Named*

The crux of this motion is whether there is a genuine issue of material fact pertaining to step two. Essentially, did Plaintiffs prove that (1) they contributed the idea of crimping the port boss, (2) the addition of crimping to the port boss is significant, and (3) in crimping the port boss, Plaintiffs did more than merely explain well-known concepts. The Court finds that there are triable questions of fact in each of these three issues.

The first dispute of material fact is whether the Plaintiffs contributed to the conception of the idea of using a crimped port boss. Plaintiffs have argued that it was their idea to crimp the port boss; they marshal several pieces of evidence to corroborate this claim. They point to a declaration by Hawkins, the purported former boss of Campbell, in which Hawkins states that Dan Hewson and Gary Mackay are the inventors of the port boss in the Patent. (Mem. Supp. Mot. Summ. J. at 19; Mem. Supp. Mot. Summ. J. Ex. 1 at 6.) Plaintiffs also provide an email from Tube-Mac's lawyer to Campbell claiming that the Patent included ideas belonging to Gary Mackay and Dan Hewson, to which Campbell responded, "[t]he only thing that may be upsetting is *the crimping of a port boss . . . all other aspects* of the port boss design are the ideas of Trans Ocean Gas." (Mem. Supp. Mot Summ. J. at 19; Mem. Supp. Mot. Summ. J. Ex. 16 at 2.) They also refer to various design drawings, when those designs were provided to Campbell, and note similarities to designs included in the patent application. (Mem. Supp. Mot. Summ. J. at 15-16.) Campbell contends, in his own affidavit and McGrath's affidavit, that he came up with the crimping idea. McGrath claims that he and Campbell discussed crimping the port boss in 2001 and 2004. (Answer Ex. 14 at 2.) McGrath describes the relationship between Plaintiffs and Campbell, as Plaintiffs working under the supervision and direction of Campbell, thus bolstering Campbell's claim that he originated the idea. (*Id.*)

The second dispute of material fact, assuming the idea to crimp the port boss came from Plaintiffs, is whether the idea is important to the overall patent. In attempting to establish the importance of the crimped port boss to the overall design, Plaintiffs rely heavily on their claim that crimping solved a serious leakage issue. (Mem. Supp. Mot. Summ. J. at 2.) Campbell disputes whether there was even a leakage issue to solve. (Obj. at 5.). Once again, Campbell uses the McGrath affidavit to corroborate his own statements. McGrath claims that the tests that would have led to the leakage were conducted after the initial meeting with Plaintiffs, not before. (*Id.* at 2-3.) Furthermore, he claims that the leakage was a result of poor workmanship and was not the reason they decided to work with Tube-Mac. (*Id.* at 3.)

The third dispute of material fact, assuming again that the idea to crimp the port boss came from Plaintiffs, is whether Plaintiffs did more than merely explain a well-known concept by introducing the crimping idea. Again, Campbell uses the affidavit of McGrath to buttress his own statements. McGrath claims that crimping could have been done using several technologies owned by companies other than Tube-Mac. (Answer Ex. 14 at 3.) Furthermore, his characterization of Plaintiffs' contribution and their technology is that their contributions were not novel or rare. (*Id.* at 4.)

Both parties have provided evidence to support their versions of these disputed issues. Summary judgment is not appropriate when resolution of disputed issues depends upon credibility or the weight of evidence. *See Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979) (holding that summary judgment is not appropriate if the resolution of material issues depends upon credibility determinations); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for

summary judgment"); *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 305 (4th Cir. 2012) (credibility determinations are not part of summary judgment proceedings). Since the resolution of these disputed issues depends on credibility and the weight of the evidence, the Court will deny the Motion for Summary Judgment.[6]

## V. CONCLUSION

For the foregoing reasons, the Court will grant the Plaintiffs' Motion to Dismiss Defendants' Counterclaim (ECF No. 115) and will deny the Plaintiffs' Motion for Summary Judgment (ECF No. 127).

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: October 5, 2021

---

[6] Plaintiffs' Motion for Summary Judgment is also against TranzGaz. Given that the relief sought by Plaintiffs is the addition of Gary Mackay and Dan Hewson as inventors on the Patent and that the Court has determined that there are genuine issues of material fact regarding inventorship, summary judgment is inappropriate as to TranzGaz as well. Furthermore, there is a dispute between TranzGaz and Plaintiffs as to whether TranzGaz still owns the '049 Patent. (Resp. Opp'n Mot. Summ. J. at 3; Reply at 5.)